UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMERY DODD AND ELEN DODD, RICHARD DODD;
MARY DOMINGUEZ AND FRANK DOMINGUEZ;
VIVIAN DOMINGUEZ AND RAYMOND
DOMINAGUEZ; MARIE DOPKINS AND RUSSELL
H. DOPKINS; JOHN DRENNAN AND SHIRLEY
DRENNAN; BARBARA DROBICK AND KENNETH
DROBICK; PAULINE DUERKOP AND GERALD
DUERKOP; JOHNNY DUNCAN AND LEE ANNA
DUNCAN; FRANCIS DYKSTRA; THEADORE
EICHENLAUB AND THELMA EICHENLAUB;
EDNA ELLIS; RONALD ELLIS AND BARI ELLIS;
LEWIS ELLSWORTH AND PENNY ELLSWORTH;
JOHN ENGSTROM AND CAROL ENGSTROM;
CAROL ESTRADA AND MARY HELEN ESTRADA;
JOHN FARRELL AND LENORE FARRELL; EDWARD
FELIX AND LOUISE FELIX; SCOTT FERGUSON;
HERBERT FINE AND LOUISE FINE; ROBERT
FINKLE; ROBERT FISCHER; GLENN FLATT;
NANCY FOGELMAN AND JAMES FOGELMAN;
PETER FOLEY; GARY FORD AND MARY H. FORD;
ANNA FRANCE AND ROBERT FRANCE; LOUISE
GAGNON; WILLIAM GALBRAITH AND GWEN
GALBRAITH; JOE GALLEGOS AND OFELIA
GALLEGOS; PAUL GARRAHAN; SUSAN
GEISSENBERGER; DORIS GEZZAR; REX GIBBS
AND VIOLET D. GIBBS; EUGENIA GLASCO AND
JOE N. GLASCO; GAIL GODDARD; EARL GOLDMANN;
EARL GOLDSTEIN AND MELVIN GOLDSTEIN;
BARBARA GOLMON AND LLOYD D. GOLMON;
LEOPOLDO GOMEZ AND LYDIA T. GOMEZ; RUBY
GONZALES AND JOHN L. GONZALES; HELEN
GRACIA AND EDWARD GRACIA; MARY GRANISON
AND WILLIAM GRANISON; KATES GRAVES;
FREDERICK  GREEN AND CLARA GREEN; SADY
GREER AND HAROLD E. GREER; KENNETH
GREGGORY AND NANCY GREGGORY; JOHN
GRGAT AND MARGARET GRGAT; CHRISTA GROSS
AND ALFRED GROSS; GERALD GROVEN AND
PATI GROVEN; BOBBY GUYTON AND SATNSILAVA

**03 CV   9711**

**NOTICE OF REMOVAL**

(Pending Transfer to
In re Baycol Products Litig
MDL No. 1431 [D. Minn.])

273370.1

GUYTON; MARY HABRE; DONALD HALL AND PATSY
HALL; JACQUES HANDFIELD; HARVEY HARDEN
AND IRMA HARDEN; JJESS HARDY AND MARLENE
HARDY; VICTOR HARILDSTAD AND GENEVA
HARILSTAD; RITA HARLEV AND ROBERTA JEAN
HARLEV; CATHERINE HARTLINE AND MICHAEL
HARTLINE; RONALD HARUFF AND PATSY HARUFF;
BARBARA HAVENS AND JACK HAVENS; LUPE
HAVILAND AND DALE HAVILAND; ALDEN HERMAN
AND ELIES HERMAN; ROBERT HERNANDEZ; MARIA
HERRERA AND VICTOR HERRERA; VICTOR HERRERA
AND MARIA HERRERA; FLORENCE HERTAUS; TONY
HIGHT AND ANN M. HIGHT; ROBERT HILDEBRANDT
AND SHARON HILDEBRANDT; RALPH HINOJOSA, JR.
AND LINDA HINOJOSA, JR.; JOHN HOBAN AND LOLA
HOBAN; GLEN HOCH AND LOIS HOCH; LAWRENCE
HIEL, JR. AND DEBORAH HOEL; BENITA HOFFMAN AND
CHARLES HOFFMAN; THEODORE HOLLIDAY AND
COLLEEN HOLLIDAY; MARJORIE HOMER AND JOHN
HOMER; DESMOND HOOEY AND GRACE HOOEY;
JERALD HORTON AND JOYCE HORTON; HARIETTA
HOWARD AND JERALD HOWARD; GLORIA HOWSON;
RICHARD HUEBNER AND SUSAN HUEBNER; MAE HUGGINS
AND ARCHIE HUGGINS; MYRNA HUNT; PAUL HUPP
AND MARAJEAN HUPP; BONNIE HYMAN-FIGY AND
EUGENE HYMAN; CALVIN JACKSON AND FLOY JACKSON;
ROBERTA JACKSON; JOHN JACKSON, JR. AND SHELBY
JACKSON; FRANCISCO JAIME; ROSALIE JAMESON;
PATRICIA JANSSEN AND JOHN JANSSEN; JANICE
JERNIGAN; GERALD JIRON; DALCIE JOHNSON; EDWARD
JOHNSON AND SHIRLEY JOHNSON; FLOYD JOHNSON
AND GILLIAN GRAFTON; JERI-LOU JOHNSON AND
JOSEPH JOHNSON; MARVIN JOHNSON AND DORIS
JOHNSON; RICHARD JONASON AND BESS M. JONASON;
GAIL JONES; NANCY JONES AND ALBERT JONES;
MIDA JORDAN; ALEX JUAREZ AND NANCY JUAREZ;
JERRY KAMCHI AND BEVERLY KAMCHI; DENNIS

KELLEY AND SHERRY KELLEY; WILLIAM KELLEY
AND BARBARA KELLEY;

       Plaintiffs,

  - against -

BAYER CORPORATION,  BAYER AG,
GLAXOSMITHKLINE, PLC,
SMITHKLINE BEECHAM CORPORATION
D/B/A GLAXOSMITHKLINE

       Defendants.

-------------------------------------------------------------------X

   In accordance with 28 U.S.C. §§ 1332, 1441 and 1446, FED. R. CIV. P. 81(c), and

Local Civil Rule 81.1 of the United States District Courts for the Southern and Eastern Districts of

New York, Defendant Bayer Corporation ("Bayer") hereby removes the above-captioned action,

which had been pending under Index No. 113020-03 in the Supreme Court of the State of New York,

County of New York, to the United States District Court for the Southern District of New York.  In

support of this Notice, removing defendants state as follows:

   1. Complaint.  This lawsuit is a civil action within the meaning of 28 U.S.C. §§

1441(b) and 1446(b).  Plaintiffs filed this First Amended Verified Complaint ("Amended

Complaint" or "Amd. Compl.") on November 6, 2003.[1]  Plaintiffs allege they suffered personal

injuries due to their ingestion of Baycol®, a drug marketed by Bayer, and that they incurred damages

due to alleged misrepresentations regarding Baycol®.  See Amd. Compl. ¶12 (*Exhibit "A"*, hereto).

Plaintiffs assert claims for fraud, negligence, failure to warn, strict product liability, breach of

---

[1] This complaint was originally filed with the Supreme Court, County of New York on July 16, 2003, with
multiple plaintiffs named.  On November 6, 2003, an amended Summons and Complaint was filed.

warranty, negligence per se, violation of General Business Law §§ 349 and 350, and loss of consortium.

2.    <u>Service and Consent</u>.  Defendant Bayer was served with a copy of the Amended Summons and Complaint on November 6, 2003.[2]  Upon information and belief, defendant SmithKline Beecham Corporation ("GSK") was also served with a copy of the Amended Summons and Complaint on November 6, 2003.  Defendant GSK subsequently executed a consent to removal, which is attached hereto as ***Exhibit "B"***.  Upon information and belief, Defendant Glaxosmithkline PLC has not yet been served.  Notwithstanding lack of service of process, Glaxosmithkline PLC has executed a consent to removal, also attached as ***Exhibit "C"***.

3.    <u>Basis for Jurisdiction in this Court</u>.  The basis for jurisdiction in this Court is diversity of citizenship under 28 U.S.C. § 1332(a).

A.    <u>Diversity of Citizenship</u>

<u>Plaintiffs</u>

Upon information and belief, all named plaintiffs are individuals and are residents and citizens of the State of Arizona.  <u>See</u> Amd. Compl. ¶1 (Ex. A).  The specific addresses of the Plaintiffs cannot be ascertained from the Amended Complaint.

<u>Defendants</u>

Defendant Bayer is now, and was at the time of filing of this action, a corporation

---

[2] Bayer A.G. has yet to be served.  Upon information and belief, Glaxosmithkline PLC has not yet been served.  Even if Bayer AG had been served, its inclusion in this lawsuit would not affect this Court's diversity jurisdiction because it is a foreign corporation organized under the laws of Germany with its principal place of business in Germany.  Bayer AG which is represented by counsel for Bayer, consents to this removal without waiving its rights to proper service and reserving all other rights.

273370.1                                    4

organized and existing under the laws of the State of Indiana, having its principal place of business in the Commonwealth of Pennsylvania. Compl. ¶2(a). Accordingly, under 28 U.S.C. § 1332(c)(1), Bayer is a resident and citizen of both the states of Indiana and Pennsylvania.

Defendant Bayer A.G. is now, and was at the time of filing of this action, a foreign corporation organized and existing under the laws of Germany with its principal place of business in Germany. Amd. Compl. ¶2(b).

Defendant GSK is now, and was at the time filing of this action, a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Pennsylvania. Compl., ¶2(d). Accordingly, under 28 U.S.C. § 1332(c)(1), it is a resident and citizen of the Commonwealth of Pennsylvania.

Defendant Glaxosmithkline PLC is now, and was at the time of filing of this action, a foreign corporation organized and existing under the laws of the United Kingdom with its principal place of business in the United Kingdom. Amd. Compl. ¶2(c).

Accordingly, there is complete diversity of citizenship between plaintiffs and all defendants. Plaintiffs are residents and citizens of Arizona and none of the putative defendants Bayer, Bayer A.G., GSK, or Glaxosmithkline, PLC – are citizens of Arizona. Thus, there are no non-diverse defendants.

B.     Amount in Controversy

The amount in controversy exceeds $75,000, exclusive of interest and costs. The Amended Complaint alleges that Baycol® caused serious injuries to plaintiff. Amd. Compl. ¶12. The Amended Complaint specifically seeks "compensatory damages in a sum that exceeds the

273370.1                                5

jurisdictional limit of any Court that would otherwise have jurisdiction." (See Amended Complaint at Prayer for Relief).

Notice Given. Bayer has simultaneously filed a true and correct copy of this Notice of Removal with the Clerk of the Supreme Court of the State of New York, County of New York. See 28 U.S.C. § 1446(d). A copy of the Notice to State Court of Filing of Notice of Removal in the State Court is attached hereto as *Exhibit "D"*. (To avoid duplication, Ex. D does not include the exhibits to the Notice to State Court of Filing of Notice of Removal in the State Court).

4. Removal is Timely. Both Defendant Bayer and Defendant GSK were served with a copy of the Amended Summons and Complaint on November 6, 2003. Accordingly, this Notice of Removal is timely filed within the thirty days allotted for removal by 28 U.S.C. § 1446(b). See Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999)(holding that thirty day time period under removal statute begins to run from the date of formal service). Further, all defendants whose consent is required have consented to this removal in timely fashion. *Exhibit "C"*.

5. Pleadings and Process. Under 28 U.S.C. § 1446(a), a removing defendant is required to attach to this notice a copy of all process, pleadings, and orders served upon it. Accordingly, as noted previously, a copy of the Amended Summons and Complaint is attached hereto as *Exhibit "A"*.

6. Baycol MDL. On December 18, 2001, the Judicial Panel on Multi-District Litigation ("JPML") issued an order establishing an MDL for all Baycol lawsuits pending in the

Litigation ("JPML") issued an order establishing an MDL for all Baycol lawsuits pending in the federal courts. See In re Baycol Prods. Liab. Litig., 180 F. Supp. 2d 1378 (J.P.M.L. 2001). The JPML has been transferring all such cases to the United States District Court for the District of Minnesota. Defendant Bayer intends to notify the JPML that this action is a "tag-along" case that should be transferred to the MDL proceedings in the District of Minnesota.

WHEREFORE, Bayer hereby removes this case from the Supreme Court of the State of New York, County of New York, to this United States District Court.

Dated: New York, New York
December 8, 2003

BAYER CORPORATION

By: _____
   Daniel S. Ratner (DR 7823)
   Scott M. Zimmerman (SM 2735)
   Heidell, Pittoni, Murphy & Bach LLP
   99 Park Avenue
   New York, New York 10016
   (212) 286-8585


TO:   Victoria Maniatis, Esq.
      WEITZ & LUXENBERG, P.C.
      Attorneys for Plaintiffs
      180 Maiden Lane
      New York, NY 10038


      David Gordon, Esq.
      Beth L. Kaufman, Esq.
      Schoeman, Updike & Kaufman, LLP
      Attorneys for defendants GLAXOSMITHKLINE, PLC and
      SMITHKLINE BEECHAM CORPORATION
      60 East 42nd Street
      New York, New York  10165

273376.1                                          7

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------X
IN RE: BAYCOL PRODUCTS
        LIABILITY LITIGATION
-----------------------------------------------------------X

EMERY DODD AND ELEN DODD;
ROBERT DODD;
MARY DOMINGUEZ AND FRANK DOMINGUEZ;
VIVIAN DOMINGUEZ AND RAYMOND DOMINGUEZ;
MARIE DOPKINS AND RUSSELL H. DOPKINS;
JOHN DRENNAN AND SHIRLEY DRENNAN;
BARBARA DROBICK AND KENNETH DROBICK;
PAULINE DUERKOP AND GERALD DUERKOP;
JOHNNY DUNCAN AND LEE ANNA DUNCAN;
FRANCIS DYKSTRA;
THEADORE EICHENLAUB AND THELMA EICHENLAUB;
EDNA ELLIS;
RONALD ELLIS AND BARI ELLIS;
LEWIS ELLSWORTH AND PENNY ELLSWORTH;
JOHN ENGSTROM AND CAROL ENGSTROM;
CARLOS ESTRADA AND MARY HELEN ESTRADA;
JOHN FARRELL AND LENORE FARRELL;
EDWARD FELIX AND LOUISE FELIX;
SCOTT FERGUSON;
HERBERT FINE AND LOUISE FINE;
ROBERT FINKLE;
ROBERT FISCHER;
GLENN FLATT;
NANCY FOGLEMAN AND JAMES FOGLEMAN;
PETER FOLEY;
GARY FORD AND MARY H. FORD;
ANNA FRANCE AND ROBERT FRANCE;
LOUISE GAGNON;
WILLIAM GALBRAITH AND GWEN GALBRAITH;
JOE GALLEGOS AND OFELIA GALLEGOS;
PAUL GARRAHAN;
SUSAN GEISSENBERGER;
DORIS GEZZAR;
REX GIBBS AND VIOLET D. GIBBS;
EUGENIA GLASCO AND JOE N. GLASCO;
GAIL GODDARD;
EARL GOLDMANN;

Hon.

**SUPPLEMENTAL**
**SUMMONS**

NEW YORK
COUNTY CLERK'S OFFICE

NOV 5 2003

NOT COMPARED
WITH COPY FILED

ELEANOR GOLDSTEIN AND MELVIN GOLDSTEIN;
BARBARA GOLMON AND LLOYD D. GOLMON;
LEOPOLDO GOMEZ AND LYDIA T. GOMEZ;
RUBY GONZALES AND JOHN L. GONZALES;
HELEN GRACIA AND EDWARD GRACIA;
MARY GRANISON AND WILLIAM GRANISON;
KATE GRAVES;
FREDERICK GREEN AND CLARA GREEN;
SADY GREER AND HAROLD E. GREER;
KENNETH GREGGORY AND NANCY GREGGORY;
WILLIAM GREGORY AND KATHLEEN GREGORY;
JOHN GRGAT AND MARGARET GRGAT;
CHRISTA GROSS AND ALFRED GROSS;
GERALD GROVEN AND PATI GROVEN;
BOBBY GUYTON AND STANISLAVA GUYTON;
MARY HABRE;
DONALD HALL AND PATSY HALL;
JACQUES HANDFIELD;
HARVEY HARDEN AND IRMA HARDEN;
JESS HARDY AND MARLENE HARDY;
VICTOR HARILDSTAD AND GENEVA HARILDSTAD;
RITA HARKEY AND WILLIAM HARKEY;
ALFRED HARLEV AND ROBERTA JEAN HARLEV;
CATHERINE HARTLINE AND MICHAEL HARTLINE;
RONALD HARUFF AND PATSY HARUFF;
BARBARA HAVENS AND JACK HAVENS;
LUPE HAVILAND AND DALE HAVILAND;
ALDEN HERMAN AND ELIES HERMAN;
ROBERT HERNANDEZ;
MARIA HERRERA AND VICTOR HERRERA;
VICTOR HERRERA AND MARIA HERRERA;
FLORENCE HERTAUS;
TONY HIGHT AND ANN M. HIGHT;
ROBERT HILDEBRANDT AND SHARON HILDEBRANDT;
RALPH HINOJOSA, JR AND LINDA HINOJOSA, JR;
JOHN HOBAN AND LOLA HOBAN;
GLEN HOCH AND LOIS HOCH;
LAWRENCE HOEL, JR. AND DEBORAH HOEL;
BENITA HOFFMAN AND CHARLES HOFFMAN;
THEODORE HOLLIDAY AND COLLEEN HOLLIDAY;
MARJORIE HOMER AND JOHN HOMER;
DESMOND HOOEY AND GRACE HOOEY;
JERALD HORTON AND JOYCE HORTON;
HARIETTA HOWARD AND JERALD HOWARD;
GLORIA HOWSON;
RICHARD HUEBNER AND SUSAN HUEBNER;

MAE HUGGINS AND ARCHIE HUGGINS;
MYRNA HUNT;
PAUL HUPP AND MARAJEAN HUPP;
BONNIE HYMAN-FIGY AND EUGENE HYMAN;
CALVIN JACKSON AND FLOY JACKSON;
ROBERTA JACKSON;
JOHN JACKSON, JR AND SHELBY JACKSON;
FRANCISCO JAIME;
ROSALIE JAMESON;
PATRICIA JANSSEN AND JOHN JANSSEN;
JANICE JERNIGAN;
GERALD JIRON;
DALCIE JOHNSON;
EDWARD JOHNSON AND SHIRLEY JOHNSON;
FLOYD JOHNSON AND GILLIAN GRAFTON;
JERI-LOU JOHNSON AND JOSEPH JOHNSON;
MARVIN JOHNSON AND DORIS JOHNSON;
RICHARD JONASON AND BESS M. JONASON;
GAIL JONES;
NANCY JONES AND ALBERT JONES;
MIDA JORDAN;
ALEX JUAREZ AND NANCY JUAREZ;
JERRY KAMCHI AND BEVERLY KAMCHI;
DENNIS KELLEY AND SHERRY KELLEY;
WILLIAM KELLY AND BARBARA KELLY;

|                | Plaintiffs, | Index No.: 113020/03 |
|                |             | Date Filed: July 16, 2003 |

-against-

BAYER CORPORATION,
BAYER AG,
GLAXOSMITHKLINE, PLC,
SMITHKLINE BEECHAM CORPORATION
D/B/A GLAXOSMITHKLINE,

Plaintiffs designate New York
County as place
of trial

The basis of venue is
Defendants' Residence

Defendants.

-------------------------------------------------------X

To the above named Defendants

**You are hereby summoned** to answer the Complaint in this action and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
      November 5, 2003

Paul J. Pennock, Esq.
WEITZ & LUXENBERG, P.C.
Attorneys for Plaintiffs
Post Office Address
180 Maiden Lane, 17th Floor
New York, New York 10038
(212) 558-5500

**Defendants' Addresses:**

BAYER CORPORATION
511 Benedict Ave
Tarrytown, NY 10591

BAYER AG
Lydia Schulze Althoff
Rechtsabteilung/Legal Department
Geb.  Q26
D-51368 Leverkusen
Germany

GLAXOSMITHKLINE, PLC
Berkley Avenue
Greenford, Middlesex UB6 0NN
UNITED KINGDOM

SMITHKLINE BEECHAM CORPORATION
D/B/A GLAXOSMITHKLINE
One Franklin Plaza
200 N. 16th Street
Philadelphia, PA 19102

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------X

EMERY DODD AND ELEN DODD;
ROBERT DODD;
MARY DOMINGUEZ AND FRANK DOMINGUEZ;
VIVIAN DOMINGUEZ AND RAYMOND DOMINGUEZ;
MARIE DOPKINS AND RUSSELL H. DOPKINS;
JOHN DRENNAN AND SHIRLEY DRENNAN;
BARBARA DROBICK AND KENNETH DROBICK;
PAULINE DUERKOP AND GERALD DUERKOP;
JOHNNY DUNCAN AND LEE ANNA DUNCAN;
FRANCIS DYKSTRA;
THEADORE EICHENLAUB AND THELMA EICHENLAUB;
EDNA ELLIS;
RONALD ELLIS AND BARI ELLIS;
LEWIS ELLSWORTH AND PENNY ELLSWORTH;
JOHN ENGSTROM AND CAROL ENGSTROM;
CARLOS ESTRADA AND MARY HELEN ESTRADA;
JOHN FARRELL AND LENORE FARRELL;
EDWARD FELIX AND LOUISE FELIX;
SCOTT FERGUSON;
HERBERT FINE AND LOUISE FINE;
ROBERT FINKLE;
ROBERT FISCHER;
GLENN FLATT;
NANCY FOGLEMAN AND JAMES FOGLEMAN;
PETER FOLEY;
GARY FORD AND MARY H. FORD;
ANNA FRANCE AND ROBERT FRANCE;
LOUISE GAGNON;
WILLIAM GALBRAITH AND GWEN GALBRAITH;
JOE GALLEGOS AND OFELIA GALLEGOS;
PAUL GARRAHAN;
SUSAN GEISSENBERGER;
DORIS GEZZAR;
REX GIBBS AND VIOLET D. GIBBS;
EUGENIA GLASCO AND JOE N. GLASCO;
GAIL GODDARD;
EARL GOLDMANN;
ELEANOR GOLDSTEIN AND MELVIN GOLDSTEIN;
BARBARA GOLMON AND LLOYD D. GOLMON;
LEOPOLDO GOMEZ AND LYDIA T. GOMEZ;

Index No. 113020/03

Hon.

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

1

RUBY GONZALES AND JOHN L. GONZALES;
HELEN GRACIA AND EDWARD GRACIA;
MARY GRANISON AND WILLIAM GRANISON;
KATE GRAVES;
FREDERICK GREEN AND CLARA GREEN;
SADY GREER AND HAROLD E. GREER;
KENNETH GREGGORY AND NANCY GREGGORY;
WILLIAM GREGORY AND KATHLEEN GREGORY;
JOHN GRGAT AND MARGARET GRGAT;
CHRISTA GROSS AND ALFRED GROSS;
GERALD GROVEN AND PATI GROVEN;
BOBBY GUYTON AND STANISLAVA GUYTON;
MARY HABRE;
DONALD HALL AND PATSY HALL;
JACQUES HANDFIELD;
HARVEY HARDEN AND IRMA HARDEN;
JESS HARDY AND MARLENE HARDY;
VICTOR HARILDSTAD AND GENEVA HARILDSTAD;
RITA HARKEY AND WILLIAM HARKEY;
ALFRED HARLEV AND ROBERTA JEAN HARLEV;
CATHERINE HARTLINE AND MICHAEL HARTLINE;
RONALD HARUFF AND PATSY HARUFF;
BARBARA HAVENS AND JACK HAVENS;
LUPE HAVILAND AND DALE HAVILAND;
ALDEN HERMAN AND ELIES HERMAN;
ROBERT HERNANDEZ;
MARIA HERRERA AND VICTOR HERRERA;
VICTOR HERRERA AND MARIA HERRERA;
FLORENCE HERTAUS;
TONY HIGHT AND ANN M. HIGHT;
ROBERT HILDEBRANDT AND SHARON HILDEBRANDT;
RALPH HINOJOSA, JR AND LINDA HINOJOSA, JR;
JOHN HOBAN AND LOLA HOBAN;
GLEN HOCH AND LOIS HOCH;
LAWRENCE HOEL, JR. AND DEBORAH HOEL;
BENITA HOFFMAN AND CHARLES HOFFMAN;
THEODORE HOLLIDAY AND COLLEEN HOLLIDAY;
MARJORIE HOMER AND JOHN HOMER;
DESMOND HOOEY AND GRACE HOOEY;
JERALD HORTON AND JOYCE HORTON;
HARIETTA HOWARD AND JERALD HOWARD;
GLORIA HOWSON;
RICHARD HUEBNER AND SUSAN HUEBNER;

2

MAE HUGGINS AND ARCHIE HUGGINS;
MYRNA HUNT;
PAUL HUPP AND MARAJEAN HUPP;
BONNIE HYMAN-FIGY AND EUGENE HYMAN;
CALVIN JACKSON AND FLOY JACKSON;
ROBERTA JACKSON;
JOHN JACKSON, JR AND SHELBY JACKSON;
FRANCISCO JAIME;
ROSALIE JAMESON;
PATRICIA JANSSEN AND JOHN JANSSEN;
JANICE JERNIGAN;
GERALD JIRON;
DALCIE JOHNSON;
EDWARD JOHNSON AND SHIRLEY JOHNSON;
FLOYD JOHNSON AND GILLIAN GRAFTON;
JERI-LOU JOHNSON AND JOSEPH JOHNSON;
MARVIN JOHNSON AND DORIS JOHNSON;
RICHARD JONASON AND BESS M. JONASON;
GAIL JONES;
NANCY JONES AND ALBERT JONES;
MIDA JORDAN;
ALEX JUAREZ AND NANCY JUAREZ;
JERRY KAMCHI AND BEVERLY KAMCHI;
DENNIS KELLEY AND SHERRY KELLEY;
WILLIAM KELLY AND BARBARA KELLY;

Plaintiffs,

-against-

BAYER CORPORATION,
BAYER AG,
GLAXOSMITHKLINE, PLC,
SMITHKLINE BEECHAM CORPORATION
D/B/A GLAXOSMITHKLINE
                     Defendants.
-------------------------------------------------------X

**FIRST AMENDED
VERIFIED COMPLAINT**

Plaintiffs, by their attorneys, WEITZ & LUXENBERG, P.C., complaining of the

defendants herein, respectfully allege to this Court upon information and belief as follows:

3

## PARTIES

1.    Plaintiffs Emery Dodd and Elen Dodd, Robert Dodd, Dominguez, Dopkins, Drennan, Drobick, Duerkop, Duncan, Dykstra, Eichenlaub, Ellis, Ellsworth, Engstrom, Estrada, Farrell, Felix, Ferguson, Fine, Finkle, Fischer, Flatt, Fogleman, Foley, Ford, France, Gagnon, Galbraith, Gallegos, Garrahan, Geissenberger, Gezzar, Gibbs, Glasco, Goddard, Goldmann, Goldstein, Golmon, Gomez, Gonzales, Garcia, Granison, Graves, Green, Greer, Greggory, Gregory, Grgat, Gross, Groven, Guyton, Habre, Donald Hall and Patsy Hall, Handfield, Harden, Hardy, Harildstad, Harkey, Harlev, Hartline, Haruff, Havens, Haviland, Herman, Hernandez, Maria Herrera and Victor Herrera, Victor Herrera and Maria Herrera, Herrera, Hertaus, Hight, Hildebrandt, Hinojosa, Hoban, Hoch, Hoel, Hoffman, Holliday, Homer, Hooey, Horton, Howard, Howson, Huebner, Huggins, Hunt, Hupp, Hyman-Figy, Calvin Jackson and Floy Jackson, Roberta Jackson, John Jackson, Jr. and Shelby Jackson, Jaime, Jameson, Janssen, Jernigan, Jiron, Edward Johnson and Shirley Johnson, Floyd Johnson and Gillian Grafton, Jeri-Lou Johnson and Joseph Johnson, Marvin Johnson and Doris Johnson, Jonason, Gail Jones, Nancy Jones and Albert Jones, Jordan, Juarez, Kamchi, Kelley, and William Kelly and Barbara Kelly, reside in the state of Arizona, county of Maricopa

2.    The defendants and their addresses are:

a.  Bayer Corporation (herein after referred to as "Bayer Corp.") is incorporated in Indiana, with a principal place of business in Pennsylvania, the address is 100 Bayer Road, Pittsburgh, Pennsylvania 15205-9741, and has offices in the state of New York.

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

4

    b.   Bayer AG is a German corporation whose principal place of business in the United States is in Pennsylvania, and is authorized to do business and is present in the State of New York.

    c.   GlaxoSmithKline, PLC is a United Kingdom Corporation with its principal place of business in the United Kingdom and regularly conducts business in and is present in the State of New York.

    d.   SmithKline Beecham Corporation D/B/A GlaxoSmithKline (herein after referred to as "GSK") is a Pennsylvania Corporation whose address and principal place of business is 1 Franklin Plaza, Philadelphia, Pennsylvania, 19101, and is present in the State of New York.

3.   Bayer Corp. was and/or is merely a branch and/or division of defendant Bayer AG due to common ownership, financial dependency, identity of personnel, failure to observe corporate formalities and other circumstances.

4.   Bayer Corp. is a wholly owned subsidiary of Bayer AG.

5.   Bayer AG identifies all of its entities/corporations/divisions as the "Bayer Group."

6.   On December 27, 2000, SmithKline Beecham and Glaxo Wellcome merged to form GSK.

7.   Upon information and belief, Baycol is also known as Cerivastatin and Lipobay.

8.   Upon information and belief, Baycol was manufactured in Germany.

9.   Upon information and belief, some Baycol that was manufactured in

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

Germany was sold in the United States.

10.     Upon information and belief, at one time Baycol was or is, a registered trademark of GW USA, Inc.

11.     Bayer Corp. has listed with the New York Department of State, its Chief Executive Officer, as being Walter Wenninger, PhD., Bayer AG Board of MGMT, Bayerwerk D-51368, Leverkusen, Germany.

## FACTUAL BACKGROUND

12.     This is an action against the defendants on behalf of the plaintiffs, Baycol users, who were prescribed the drug Baycol, also known as Cerivastatin and Lipobay, and who ingested the prescribed dosage of said drug in accordance with the prescription written by the plaintiffs' physicians and the container label prepared by Plaintiffs' pharmacists, and who were seriously injured.

13.     Defendants aggressively promoted and sold hundreds of millions of doses of this medication to hundreds of thousands of persons who had or were thought to have high cholesterol levels.

14.     These persons include plaintiffs who were wrongly exposed to the harmful effects of Baycol.

15.     These harmful effects were known to the defendants at all times relevant to this complaint, but were not communicated and/or were not adequately communicated to the plaintiffs, plaintiffs' physicians, pharmacists, other medical professionals or their facilities (hereinafter, "medical professionals"), and/or the U.S. Food and Drug Administration (hereinafter "FDA").

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

6

16.    Before, after and at the time of the manufacture, promotion and sale of Baycol to the plaintiffs, the defendants possessed detailed technical information and had knowledge that indicated that Baycol caused significant and harmful side effects, including: muscle pain, tenderness and weakness, loss of strength and mobility in upper and lower extremities, fatigue, nausea, destruction of muscle tissue, rhabdomyolysis, myoglobinurea, liver damage, and/or liver failure, kidney damage, and/or kidney failure, other health problems, and/or death, and was otherwise extremely hazardous.

17.    The defendants concealed this information from plaintiffs and plaintiffs' medical professionals.

18.    The defendants publicly represented that Baycol was safe and posed no significant health hazards to consumers.

19.    In reality, Baycol can be, and is, highly toxic and presents an unacceptable risk of harm to consumers.

20.    The defendants also unnecessarily put at risk and wrongfully caused plaintiffs harm without full, proper, and/or timely disclosure, and/or warning of the potential associated risks, hazards, and/or benefits in a truthful way, and/or otherwise acted in such a way as to be negligent, reckless, and as otherwise described in this complaint, liable to plaintiffs.

21.    Plaintiffs have suffered damages proximately resulting from the defective nature of Baycol and defendants' conduct.

22.    The defendants were in the business of manufacturing and promoting, marketing, researching, distributing and selling prescription medications and non-

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

7

prescription drugs (hereinafter "marketed"), including Baycol, in the State of New York.

23.    Prior to prescription of and the intake of the aforementioned Baycol, plaintiffs were diagnosed as suffering from high cholesterol levels, but were otherwise in reasonably stable health.

24.    As a result of taking of defendants' Baycol, plaintiffs suffered damages and injuries.  These damages include, but are not limited to, pain, suffering, loss in quality of life, loss of earnings and diminution in earning capacity, loss of society and comfort, loss of consortium and expenses for reasonable hospital, nursing, and medical services.

25.    At the time that the defendants promoted Baycol, there existed five (5) other drugs known as statins available in the United States to treat high cholesterol.

26.    The reason that Baycol was marketed by the manufacturing defendants was to make a profit.

27.    The defendants, individually and jointly, aggressively took action to accelerate Baycol for approval by the FDA.

28.    By July 1997, the defendants had fraudulently, negligently, recklessly and/or otherwise in bad faith and in violation of their responsibility to the consuming public and their medical professionals, secured FDA approval for Baycol.

29.    The defendants marketed Baycol in the United States from February 1998 until August 2001, at which time the drug was withdrawn by Defendants from the United States market.

30.    The FDA approved of and supported the withdrawal of Baycol.

31.    Months prior to the recall of Baycol, British regulators had already banned

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

8

certain dosage levels of Baycol. Japan had also limited sales of Baycol to .3mg.or less, and the FDA considered a similar reduction in Baycol doses available in the United States.

32. Many Baycol related injuries, illnesses and fatalities occurred with the introduction of Baycol's .8mg. dose in July of 2000.

33. After deaths related to Baycol were reported, defendants considered instructing salespeople to not give away samples of the .8mg. dose.

34. Deaths from Baycol have been related to .4 mg. and .8mg. doses of Baycol alone as well as when Baycol was used simultaneously with Gemfibrozil, another cholesterol-reducing medication.

35. Reports of rhabdomyolysis were reported at least 10 times as frequently with Baycol use as opposed to other cholesterol reducing medications.

36. Since 1999 Bayer knew of increased occurrence of illness and/or death when Baycol and Gemfibrozil, another cholesterol reducing medication, were used simultaneously.

37. Prior to presenting the matter to the FDA, defendants had failed to conduct sufficient, necessary and/or appropriate studies regarding the safety and efficacy of Baycol, and/or conducted studies that would be sufficient but Defendants suppressed or modified information from such studies.

38. Despite this fact, defendants represented the contrary to the FDA, the National Institute of Health (hereinafter "NIH"), the consuming public and medical professionals.

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

9

39.    Based on the studies conducted the defendants knew or should have known that Baycol posed serious and potentially dangerous and life threatening hazards to persons to whom it would be prescribed.

40.    Moreover, after knowing that Baycol was harmful to health and could cause life-threatening illness to persons who consumed it, defendants through their agents and employees, continued to promote the use of Baycol to physicians who would be prescribing the drug to persons such as plaintiffs and the members of the public. They failed to adequately and timely inform the consuming public, federal authorities, the FDA and/or medical professionals.

41.    The defendants engaged in conduct designed to corrupt the approval process for Baycol and generally defraud the FDA and the consuming public, including the plaintiffs.

42.    As part of, and subsequent to, its highly promoted release to the consuming public in February of 1998, the defendants had knowingly, intentionally, fraudulently, negligently, recklessly and/or otherwise in bad faith and in violation of their duties to the consuming public and the plaintiffs, touted Baycol as virtually free of side effects, despite the fact that defendants' own research indicated that Baycol users were significantly more likely to suffer muscle tissue pain and destruction, rhabdomyolysis, liver injury and/or failure, kidney injury and/or failure and death.

43.    Statements from the defendants relating to Baycol were later found to be inaccurate, incomplete, and/or false and misleading by federal regulators. The FDA has issued numerous warnings concerning the danger of Baycol, since its approval of the

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

10

drug, which was based on statements made to it by the defendants.

44.     The defendants actively concealed the dangers relating to Baycol from the plaintiffs, the FDA, the world-wide consuming population of high cholesterol medicating patients and medical professionals.

45.     The plaintiffs did not know and were not made aware of the full extent of the risks and dangers associated with Baycol.  The defendants intended to deceive the consuming public, medical professionals and the plaintiffs into believing that Baycol was safe, when it knew or should have reasonably known the true nature and extent of the serious side effects.  The defendants failed to provide adequate warnings to the plaintiffs and/or plaintiffs' physicians and other medical professionals, regarding these dangerous side effects.  In fact, the defendants warranted and represented that the benefits of Baycol outweighed the risks and that the drug was safe.

46.     Had the plaintiffs known of the full extent of the risks and dangers associated with Baycol, the plaintiffs would not have taken Baycol.

47.     On February 18, 1998, Bayer Corporation, Pharmaceutical Division and SmithKline Beecham announced the launch of Baycol.  The initial production was at the .2 and .3 mg. dosage.  Baycol was similarly released in Canada in March of 1998.

48.     On May 26, 1999 the FDA approved a .4 mg. dose of Baycol.

49.     The FDA approval of the .4 mg. Baycol dose was based on data provided from 2 studies performed with patients over 8 weeks.

50.     The Department of Health & Human Services, Division of Drug Marketing, Advertising and Communication (DDMAC) objected to Bayer Corporation's promotional

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10008

11

material for Baycol in an October 25, 1999 letter. The DDMAC's objections included

allegations of :

     - misleading claims that Baycol is superior to other statins because of its synthetic

makeup;

     -misleading claims as to enzyme inhibition;

     -overstating the efficacy of Baycol;

     -failure to effectively present information regarding side effects and

contraindications; and

     -inadequate disclaimers and footnotes.

     51.    In December of 1999, deaths were reported due to rhabdomyolysis in Baycol

patients.

     52.    On July 24, 2000, the FDA approved the .8 mg. dose of Baycol.

     53.    On May 21, 2001, Bayer issued a letter to Health Care Professionals

regarding:

     (a)    Voluntary changes to prescribing information for Baycol,

     specifically revising the "Dosage and Administration" section to

     "highlight that .4 mg. is the starting dose for Baycol (1 time per

     day).....[o]nly patients requiring further lipid adjustment should be

     titrated to .8 mg." Lower doses were recommended for patients with

     significant renal impairment.

     (b)    Bayer added a section to the "Warnings-Skeletal Muscle" section

     reinforcing the .4 mg. start dose stating that "Beginning therapy

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

12

above .4 mg. ...increases the risk of myopathy and rhabdomyolysis."

(c)    The "Patient Information" section states "if you are taking Baycol for

the first time, your daily dose should be .4 mg. or lower."

The correspondence was insufficient to achieve its purpose. It was not complete, did not

contain sufficient detail to accomplish its so-called purpose of providing timely and

complete disclosure to medical professionals of what the defendants knew and was not

otherwise designed to capture the attention of its audience.

54.    On August 8, 2001, Bayer withdrew Baycol from the US market following

reports that at least 32 deaths in the United States from rhabdomyolysis were related to

the           use           of           Baycol.

55.    The recommended changes and the reasons for the announcement were

known to the defendants for an extensive period of time prior to May 21, 2001 and well

before Baycol's recall on August 8, 2001. Therefore, the defendants did not timely, fully

and adequately provide notice to or otherwise fulfill its duty to the plaintiffs, the

consuming public and medical professionals.

56.    The defendants' singular motive in their aggressive promotion of Baycol was

profit. Baycol was one of Bayer Corp.'s biggest selling prescription drugs, being used by

approximately 6 million people, generating over 500 million dollars in sales in the year

2000 alone. Baycol's sales were projected to increase by another 50% to over 800 million

dollars for 2001.

57.    No adequate notice or warning to plaintiffs, prescribing physicians, the

consuming public and/or medical professionals was given by the defendants on these

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

13

issues.

58.     SmithKline Beecham/GSK promoted, marketed and distributed Baycol in the United States before and since its release in 1998.

59.     Bayer Corp. promoted, marketed and distributed Baycol in the United States before and since its release in 1998.

60.     Prior to the merger of SmithKline Beecham with GlaxoWellcome into defendant SmithKline Beecham/GSK, as a result of defendant SmithKline Beecham/GSK's "due diligence" and other research and investigation of SmithKline Beecham, defendant SmithKline Beecham/GSK knew or should have known of all the aforementioned conduct by SmithKline Beecham.

61.     As a result of the merger of SmithKline Beecham and Glaxo Wellcome into defendant SmithKline Beecham/GSK, as alleged in paragraph 6 above, defendant SmithKline Beecham/GSK assumed and/or is otherwise liable for all of the aforementioned conduct by SmithKline Beecham.

## EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

62.     Plaintiffs adopt by reference the allegations contained and set forth in paragraphs 1 through 61 herein.

63.     The defendants did not and/or refused to make to the consuming public and medical professionals, timely and full disclosure in a manner reasonably calculated to reach all persons taking Baycol, including the plaintiffs and all physicians prescribing Baycol, the full extent and nature of the attendant risks and known or reasonably known dangers of taking Baycol. The Defendants failed to maintain a contemporaneous database

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

14

of prescribing physicians and/or persons to whom Baycol caused injury or death. The defendants failed to report contemporaneously instances of injury or death caused by Baycol. The defendants failed to follow through on efficacy and safety of Baycol studies and report same to the FDA. This was true despite the fact that lingering safety and effectiveness questions existed. The inherent defects of the bad drug, Baycol are latent and self-concealing. Even in the exercise of reasonable care, the plaintiffs simply could not have discovered that such inherent defects existed. By suppressing the dissemination of information regarding the hazards, dangers and attendant risks of taking Baycol, the defendants intentionally foreclosed plaintiffs from learning of Baycol's latent defects. This foreclosure continues through this date.

64.     Any applicable statutes of limitations have been tolled by the defendants' acts of fraudulent concealment and denial of the facts alleged in this complaint. Such acts of fraudulent concealment include: a) knowingly, intentionally and/or recklessly covering up and refusing to disclose internal documents, b) failing to disclose that Baycol was inherently dangerous; and c) misrepresenting the character, quality and nature of Baycol in order to deceive consumers, including plaintiffs, their physicians and medical professionals, including the releasing of reports which purported to conclude that Baycol was safe. Through such acts of fraudulent concealment the defendants were able to conceal from the public, including plaintiffs, their physicians, medical professionals, the FDA, and the National Institute of Health, the truth about Baycol's defects. thereby tolling the running of any applicable statue of limitations. The plaintiffs could not reasonably have discovered the true facts of Baycol's danger, the full extent of the truth having been

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

15

fraudulently and knowingly concealed by the defendants from the date it was first released to a consuming public and/or to medical providers and/or their facilities, through the present date.

65.     Furthermore, the defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the true character, quality and nature of Baycol. The defendants were under a duty to disclose the true character, quality and nature of Baycol because this was non-public information over which the defendants had and continue to have exclusive control, and because the defendants knew that this information was not available to the plaintiffs, medical providers and/or their facilities. In addition, the defendants are estopped from relying on any statute of limitations because of their intentional concealment of these facts.

66.     The plaintiffs had no knowledge that the defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by the defendants, the plaintiffs could not have reasonably discovered the wrongdoing at any time prior. Also, the economies of this fraud should be considered. The defendants had the ability to, and did, spend enormous amounts of money in furtherance of their purpose of marketing and promoting a profitable drug, notwithstanding the known or reasonably known risks. Plaintiffs and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and were forced to rely on only the defendants' representations.

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

## CLAIMS FOR RELIEF

## COUNT I

16

## FRAUD

67.     The plaintiffs hereby adopt, repeat and reallege and incorporate by reference herein the allegations contained and set forth in paragraphs 1 through 66.

68.     Defendants' representations through national advertising, promotional campaigns, standardized package inserts, related materials, purchased or subsidized so-called expert opinions both orally and in print and in correspondence to healthcare professionals, and in submissions and reports to the FDA, and product information regarding the characteristics of and the quality of Baycol, were false, misleading, outdated, materially incorrect in fact, and were made knowingly, intentionally, and/or willfully to deceive without regard to the safety and use of the product and were acted on in reasonable reliance by plaintiffs, plaintiffs' prescribing physicians and medical professionals, to plaintiffs substantial detriment and injury.

69.     Defendants' representations as set forth above regarding the quality and characteristics of Baycol were willful and/or reckless misrepresentations of material fact made with the intent to induce plaintiffs and plaintiffs did, without knowledge of their falsity, directly or indirectly justifiably act upon those willful misrepresentations to plaintiffs' injury, as evidenced by plaintiffs' purchase and consumption of Baycol.

70.     Defendants either knew or should have known that Baycol was dangerous and not as effective for its purpose as represented, and posed greater risks than disclosed.

71.     Defendants were under a duty to disclose this information to the plaintiffs under laws requiring them not to engage in false and deceptive trade practices, and as otherwise alleged in this complaint, because defendants made representations and partial

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

17

disclosures concerning the nature and quality of their product which they had a duty to correct, because defendants were in a superior position to know the true state of the facts about the dangerous and defective nature of Baycol and its known risks to the plaintiffs and because the defects of Baycol were latent.   These intentional representations suppressed and/or concealed material facts, including but not limited to:

      a.  suppressing and/or mischaracterizing the known risks to health and effectiveness;

      b.  failing to timely and fully disclose the results of tests and studies on the risks to health and effectiveness;

      c.  failing to disseminate adequate warnings which would disclose the nature and extent of the side effects of the product, the risks to health, and effectiveness;

      d.  failing to disclose that adequate and/or standard and/or generally accepted standards for pre-clinical testing had not been done;

      e.  failing to disclose that adequate and/or standard and/or generally accepted standards for post-marketing testing had not been done;

      f.  failing to disclose that alternative products and methods available posed less risk then Baycol and were at least as effective;

      g.  failing to conduct adequate tests and studies on the product prior to marketing and making representations as set forth in this complaint;

      h.  failing to reveal the full nature and extent of the known risks and hazards associated with Baycol; and

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

18

i.   as otherwise described in this complaint, to be discovered during this litigation and to be proven at trial.

72.    As a direct and proximate result of the defendants' fraud, plaintiffs were caused to suffer damages, including, but not limited to, pain, suffering, and loss in the quality of life, loss of society and comfort, loss of consortium and to incur related expenses, including, but not limited to, prescription medicines, medical, hospital and nursing costs as well as loss of earnings, diminution in earning capacity and/or other costs as proof will show, and the plaintiffs demand all damages to which plaintiffs are entitled to under the law in an amount deemed fair and reasonable, including interest, costs, attorney fees, and punitive damages.

73.    The limitations on liability set forth in CPLR Section 1601 do not apply to this action.

74.    The limitations on liability set forth in CPLR Section 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR Section 1602.

75.    By reason of the aforesaid, plaintiffs are entitled to recovery against the defendants for compensatory damages that exceed the jurisdictional limits of all lower courts.

<u>COUNT II</u>

<u>NEGLIGENCE</u>

76.    Plaintiffs herein incorporate by reference as if fully set forth herein each and every allegation set forth in paragraphs 1 through 75. Plaintiffs, in the alternative, plead that the acts described as intentional, deliberate, outrageous, or knowing were instead

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

19

negligent and/or reckless.

77.    The defendants are liable because they breached their duty to the plaintiffs. They were negligent and/or reckless in the licensing, testing, design, manufacture, packaging, warning, advertising, promotion, distribution, representation before the FDA and NIH, and in the sale of Baycol.  Said negligence and/or recklessness includes, but is not limited to:

a.    manufacturing, compounding, testing, inspecting, packaging, labeling, distributing, marketing, examining, selling and preparing said drug in such manner that it would avoid the risk of injury to the health of users when Baycol was being used in the treatment of high cholesterol levels;

b.    manufacturing, compounding, testing, packaging, labeling, and distributing Baycol which was unsafe when it reached the hands of consuming public and medical professionals, including the plaintiffs;

c.    failing to warn and/or to adequately warn medical professionals and the consuming public of all of the risks associated with the use of said drug;

d.    failing to warn the consuming public directly and through their prescribing physicians and medical professionals, of the unreasonably dangerous defects associated with said drug after said defendant had knowledge of the same thereby breaching the continuing duty to warn;

e.    failing to accompany the product with proper, adequate, necessary and timely warnings regarding the possible adverse side effects associated with the use of Baycol and the comparative severity and duration of such adverse effects.  The

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

20

warnings given by the manufacturer did not accurately reflect the symptoms, scope and severity of the side effects known or which should have been reasonably known at the time;

    f.   providing adequate training and/or warnings to medical professionals for the appropriate use of Baycol;

    g.  warning plaintiffs and medical professionals prior to actively encouraging the sale of Baycol either directly or in directly, orally or in writing, about the following:

    i.    the need for comprehensive regular monitoring to assure early discovery of potentially serious side effects;

    ii.   the possibility of becoming seriously ill, injured, disabled or killed as a result of the drug's use and/or having to undergo liver surgery, kidney surgery, dialysis treatment, extensive physical therapy, and/or to have serious side effects involving the liver, kidney, and skeletal muscle tissues;

    iii.  that liver enzymes may become dangerously high and may result in permanent injuries;

    iv.  the potential for serious kidney injury, kidney failure and the need for kidney dialysis treatment;

    v.   the potential for suffering serious muscle damage and possibility for extensive physical therapy treatment;

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

21

vi.    the potential for developing rhabdomyolysis and/or myoglobinuria as a result of muscle tissue damage; and,

vii.    the nature and extent of adequate medical testing during the use of Baycol;

h.    failing to adequately test and/or warn about the serious side effects of Baycol;

i.    failing to include adequate warnings with the product that would alert consumers, including plaintiffs, medical professionals and other users to the potential risks and the nature, extent, scope, severity and duration of the serious side effects of Baycol;

j.    failing to inform the FDA and/or the NIH in a timely manner of new information as they became aware of it regarding the potential risks and the nature, extent, scope, severity and duration of the serious side effects of Baycol;

k.    continuing to promote the efficacy and safety of the product while providing inadequate warnings and failing to disclose the full extent of the known risk of liver damage, kidney damage, muscle tissue damage, and/or death of which the defendants knew; and;

l.    delaying warnings of and then failing to provide adequate warnings about liver damage and/or failure, kidney damage and/or failure, muscle tissue damage, rhabdomyolysis and other health problems and/or death which may have dissuaded medical providers from prescribing the product and depriving the medical providers from weighing the true risks against the benefits of prescribing the Baycol;

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

22

78.   The defendants knew or should have known that Baycol caused unreasonably dangerous side effects which many users would be unable to remedy by any means and that there were safer alternative methods for the treatment of high cholesterol levels, but continued to overstate the benefits of Baycol and understate the attendant risks and continue to aggressively market and promote Baycol to the consuming public and medical professionals.

79.   Agents, servants, consultants, experts and employees of the defendants: Bayer Corporation, Bayer AG, GlaxoSmithKline, PLC and SmithKline Beecham/GSK, engaged in the manufacture, marketing, promotion and distribution or Baycol to plaintiffs and others in the United States, knew or should have known that the Baycol which they marketed and sold was defective and unreasonably dangerous.

80.   Said defendants were obligated to use reasonable means and efforts to ascertain the truth of the representations that they were making to medical professionals and others in their marketing campaign and product information, and said defendants failed to use ordinary and reasonable care to communicate the dangers to the prescribing physicians.

81.   The defendants, and each one individually, are liable to the plaintiffs for their negligence and/or recklessness.

82.   As a direct and proximate result of the negligence and/or recklessness of the defendants and each one individually and as a result of the defendants' actions and/or inactions as set forth in this complaint, caused plaintiffs to suffer damages, including, but not limited to, pain, suffering, and loss in the quality of life, loss of society and comfort,

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

23

loss of consortium and to incur related expenses, including, but not limited to, prescription medicines, medical hospital and nursing costs as well loss of earnings, diminution in earning capacity and/or other costs as proof will show, and the plaintiffs demand all damages to which plaintiffs are entitled under the law in an amount deemed fair and reasonable, including interest, costs, attorney fees, and punitive damages.

83.     The limitations on liability set forth in CPLR Section 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR Section 1602.

84.     By reason of the aforesaid, plaintiffs are entitled to recovery against the defendants for compensatory damages that exceed the jurisdictional limits of all lower courts.

<u>COUNT III</u>

<u>FAILURE TO WARN-STRICT LIABILITY</u>

85.     The plaintiffs hereby adopt and incorporate herein the allegations contained and set forth in paragraphs 1 through 84.

86.     Bayer Corporation, Bayer AG, GlaxoSmithKline PLC and SmithKline Beecham/GSK at all times relevant hereto, were engaged in the marketing, promotion, formulation, manufacture, marketing, distribution and sale of Baycol. Said defendants are strictly liable in tort to the plaintiffs for reasons including, but not limited to, the following:

a.   Baycol was defective, unsafe and unreasonably dangerous for its intended and/or foreseeable uses.

b.     In formulating, manufacturing, distributing and prescribing a drug

in such an unreasonably dangerous condition that it was likely to cause harm to users thereof when being used for its intended purpose.

c.  In distributing, promoting and selling Baycol not accompanied by adequate warnings of the dangers that were known or should have been known and by violating their duty and obligation to provide adequate warnings of the dangers known or which should have been known to physicians who would be prescribing Baycol to the plaintiffs.  The product was unaccompanied by proper warnings regarding all known or reasonably knowable potential side effects associated with the use of Baycol, and the comparative nature, extent, severity, incidence and duration of such adverse effects.  The warnings given did not accurately reflect the signs, symptoms, incidence, scope or severity of the side effects, and/or identify appropriate testing, monitoring and/or remedial action.  The defendants negligently failed to communicate to prescribing medical professionals in a timely manner information necessary for their purposes, thus placing the consuming public at risk.

d.  The defendants failed to perform adequate testing that would have revealed that Baycol possessed serious potential side effects.  They also failed to monitor the situation as it developed.  As a result of this failure, full and proper warnings were not made that would have accurately and fully reflected the symptoms, scope and severity of this drug.

e.  Each of the defendants was aware that Baycol, which was manufactured and supplied by the defendants, would be used without inspection and study for the defects inherent in Baycol as alleged, and that given the resources of the consuming

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

25

public and their medical professionals, any reasonably anticipated inspection would have failed to detect the defects.

    f.   Each of the defendants expected and knew that Baycol would reach the consumers and their medical professionals.  Baycol was, in fact, received by the plaintiffs and medical professionals without change in the condition in which the drug was first manufactured and sold.

    g.   The plaintiffs were foreseeable users of the product and used the product in its intended manner and suffered serious harm and injury because of said use.

    87.   The Baycol manufactured and/or supplied by the defendants was defective due to inadequate post-marketing warnings and/or instructions because, after the defendants knew or should have known of the risks of injury from Baycol, they failed to provide adequate warnings to consumers of the product and continued to aggressively promote Baycol and in doses higher than initially approved by the FDA.

    88.   As a direct and proximate cause of the defective condition of Baycol as manufactured and/or supplied by the defendants and as a direct and proximate cause of their negligence, carelessness, and/or other wrongdoings and actions as described herein, plaintiffs suffered and will continue to suffer injury, harm, and economic loss.

    89.   Based on information and belief, the defendants knew of Baycol's defective nature, but continued to design, market, promote, manufacture and sell Baycol so as to maximize sales and profits at the expense of the health and safety of the consuming public and with conscience disregard of foreseeable harm.

    90.   The defendants, as pharmaceutical manufacturers and sellers, had a duty to

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

26

warn of adverse drug reactions which it knows or has reason to know, are inherent in the use of its pharmaceutical products.

91.   Prior to 1997 and/or through the date it was withdrawn from the U.S. market, the defendants knew or should have known of the risks related to Baycol, including, but not limited to, those specifically stated in this complaint.

92.   In light of this knowledge, the defendants had a duty to warn prescribing physicians and consumers, of the known or suspected risks of Baycol arising from its use.

93.   The defendants were negligent in the manufacturing, marketing, promotion and sale of the Baycol purchased by the plaintiffs, including, but not limited to, the following:

a.   failing to warn prescribing physicians or consumer patients of the actual and known risk of suffering injury to the liver, suffering injury to the kidneys, suffering injury to the muscle tissues, rhabdomyolysis, and/or otherwise suffering injury or death inherent in the use of this product;

b.   failing to adequately warn prescribing physicians or consumer patients of the early symptoms of injury to the liver, kidneys, muscle tissue, rhabdomyolysis, and/or other injuries inherent in the use of this product, the risk of which was known or reasonably should have been known, to be greater than the defendants' writings, inserts and promotions represented;

c.   failing to fully disclose to the FDA its knowledge and the nature and extent of known problems with regard to injury to the liver, kidneys, muscle tissue, rhabdomyolysis, and/or other injuries inherent in the use of this product, including

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

27

the risk of death, the risks of which were known or reasonably should have been known, to be greater than what was represented in its writings, inserts and promotions represented; and

      d.  promoting use of Baycol in an aggressive and fraudulent manner, despite evidence against the representations that the defendants made as to its safety, effectiveness and its association with injury to the liver, kidneys, muscle tissue, rhabdomyolysis, and/or other injuries, and the risk of death inherent in the use of this product.

94.    As a direct and proximate result of the negligence and negligence per se of the defendants and each one individually and as a result of the defendants' actions and/or inactions as set forth in this complaint, plaintiffs were caused to suffer damages, including, but not limited to, pain, suffering, and loss in the quality of life, loss of society and comfort, loss of consortium and to incur related expenses, including, but not limited to, prescription medicines, medical hospital and nursing costs as well as loss of earnings, diminution in earning capacity and/or other costs as proof will show, and the plaintiffs demand all damages to which plaintiffs are entitled under the law in an amount deemed fair and reasonable, including interest, costs, attorney fees, and punitive damages.

95.    The limitations on liability set forth in CPLR Section 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR Section 1602.

96.    By reason of the aforesaid, plaintiffs are entitled to recovery against the defendants for compensatory damages that exceed the jurisdictional limits of all lower courts.

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

28

<u>COUNT IV</u>

<u>DEFECTIVE DESIGN - STRICT LIABILITY</u>

97.     The plaintiffs hereby adopt and incorporate herein the allegations contained as set forth in paragraphs 1 through 96.

98.     The Baycol manufactured and/or supplied by the defendants was placed into the stream of commerce in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with the design or formulation.

99.     The Baycol manufactured and/or supplied by the defendants was placed into the stream of commerce with a defective design or formulation because it was unreasonably dangerous and more dangerous than an ordinary consumer would expect, and more dangerous than other forms of treatment for reducing cholesterol levels.

100.    As set forth in this complaint and otherwise, the defendants knew of Baycol's defective nature, but continued to design, manufacture, market, promote, represent to the consuming public, pharmacies, their prescribing physicians, and the medical and general public that Baycol was safe for the sole purpose of maximizing sales and profits at the expense of the public health and safety in conscience disregard of the foreseeable harm caused by Baycol.

101.    As a direct and proximate result of the defendants' actions and/or inactions as set forth in this complaint, plaintiffs were caused to suffer damages, including, but not limited to, pain, suffering, and loss in the quality of life, loss of society and comfort, loss of consortium, and to incur related expenses, including, but not limited to, prescription medicines, medical hospital and nursing costs as well as loss of earnings, diminution in

earning capacity and/or other costs as proof will show, and the plaintiffs demand all damages to which plaintiffs are entitled under the law in an amount deemed fair and reasonable, including interest, costs, attorney fees, and punitive damages.

102.    The limitations on liability set forth in CPLR Section 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR Section 1602.

103.    By reason of the aforesaid, plaintiffs are entitled to recovery against the defendants for compensatory damages that exceed the jurisdictional limits of all lower courts.

<u>COUNT V</u>

<u>BREACH OF IMPLIED WARRANTY</u>

104.    Plaintiffs herein incorporate by reference as if fully set forth herein each and every allegation contained in paragraphs 1 through 103.

105.    At all times material hereto, the defendants marketed, sold and distributed Baycol and knew and promoted the use for which the aforesaid drug was being used by plaintiffs and medical professionals, and impliedly warranted to plaintiffs that the aforesaid medications were of merchantable quality and safe for their intended use.

106.    The Plaintiffs and medical professionals reasonably relied on the skill, expertise and judgment of the defendants and their representations as to the fact that Baycol was safe for its intended use and of merchantable quality.

107.    The Baycol manufactured and supplied by the defendants was neither safe for the intended use nor of merchantable quality, as warranted by these defendants in that the drug had dangerous and life threatening side effects.

108.   The defendants breached their implied warranty of merchantability in that Baycol is defective and not fit for the ordinary purpose it is used; the treatment of high cholesterol levels.

109.   As a direct and proximate result of the defendants' breach of warranty, the plaintiffs were caused to suffer damages, including, but not limited to, pain, suffering, and loss in the quality of life, loss of society and comfort, and to incur related expenses, including, but not limited to, prescription medicines, medical hospital and nursing costs as well as loss of earnings, diminution in earning capacity and/or other costs as proof will show, and the plaintiffs demand all damages to which plaintiffs are entitled under the law in an amount deemed fair and reasonable, including interest, costs, attorney fees, and punitive damages.

110.   The limitations on liability set forth in CPLR Section 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR Section 1602.

111.   By reason of the aforesaid, plaintiffs are entitled to recovery against the defendants for compensatory damages that exceed the jurisdictional limits of all lower courts.

## COUNT VI

## BREACH OF EXPRESS WARRANTY

112.   Plaintiffs herein incorporate by reference as if fully set forth herein each and every allegation contained in paragraphs 1 through 111.

113.   Defendants expressly warranted that Baycol was safe for its intended use and as otherwise described in this complaint. Baycol did not conform to these express

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

31

representations, including, but not limited to, the representation that it was well accepted in patient studies, the representation that it was safe, and the representation that it did not have high and/or unacceptable levels of life-threatening side effects and as otherwise set forth in this complaint and/or in the defendants' materials. As previously alleged, notice has been presented to the defendants. This breach of express warranty claim is asserted under 15 U.S.C. 2310(d)(1), or alternatively, to any extent that the Magunson-Moss Act is found inapplicable, under UCC 2-313(2)(c), and/or for breach of contract.

114. As a direct and proximate result of the defendants' breach of warranty, plaintiffs were caused to suffer damages, including, but not limited to, pain, suffering, and loss in the quality of life, loss of society and comfort, loss of consortium, and to incur related expenses, including, but not limited to, prescription medicines, medical hospital and nursing costs as well as loss of earnings, diminution in earning capacity and/or other costs as proof will show, and the plaintiffs demand all damages to which plaintiffs are entitled under the law in an amount deemed fair and reasonable, including interest, costs, attorney fees, and punitive damages.

115. The limitations on liability set forth in CPLR Section 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR Section 1602.

116. By reason of the aforesaid, plaintiffs are entitled to recovery against the defendants for compensatory damages that exceed the jurisdictional limits of all lower courts.

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

## COUNT VII

## NEGLIGENCE *PER SE*

117. Plaintiffs herein incorporate by reference as if fully set forth herein each and

32

every allegation contained in paragraphs 1 through 116.

118.    Defendants have an obligation not to violate the law.

119.    Defendants have violated the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. 301, *et. Seq.*, related amendments and codes and federal regulations promulgated thereunder, and other applicable state and federal laws.

120.    Plaintiffs, as purchasers and consumers of Baycol, are within the class of persons the statutes described above are designed to protect.   Injury due to false, misleading and/or reckless advertising and promotion, and misbranding, misleading products and as otherwise set forth in this complaint is the specific type of harm these and other statutes are designed to prevent.

121.    Defendants are responsible to plaintiffs for injuries incurred for their violations of the statutes described above under the doctrine of negligence *per se.*

122.    As a direct and proximate result of the negligence and negligence *per se* of the defendants and each one individually and as a result of the defendants' actions and/or inactions as set forth in this complaint, plaintiffs were caused to suffer damages, including, but not limited to, pain, suffering, and loss in the quality of life, loss of society and comfort, loss of consortium, and to incur related expenses, including, but not limited to, prescription medicines, medical hospital and nursing costs as well as loss of earnings, diminution in earning capacity and/or other costs as proof will show, and the plaintiffs demand all damages to which plaintiffs are entitled under the law in an amount deemed fair and reasonable, including interest, costs, attorney fees, and punitive damages.

123.    The limitations on liability set forth in CPLR Section 1601 do not apply to this action by reason of one or more of the exceptions set forth in CPLR Section 1602.

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

33

124.   By reason of the aforesaid, plaintiffs are entitled to recovery against the defendants for compensatory damages that exceed the jurisdictional limits of all lower courts.

## COUNT VIII

### VIOLATION OF NEW YORK'S GENERAL BUSINESS LAW

125.   Plaintiffs herein incorporate by reference as is fully set forth herein each and every allegation contained in paragraphs 1 through 124.

126.   The defendants knew, or in the exercise of reasonable care, should have known that Baycol was not reasonably safe as designed, manufactured, tested and marketed.

127.   The defendants knew that Baycol carried the risk of serious adverse effects, including rhabdomyolysis, myoglobinurea, liver damage, and/or liver failure, kidney damage, and/or kidney failure to its intended users, including the plaintiffs herein.

128.   The defendants were negligent, careless and reckless in failing to warn Baycol's intended users, including plaintiffs herein, of the above unreasonable risks associated with the use of Baycol.

129.   These acts, representations and/or omissions by the defendants constitute unconscionable commercial practices in connection with the sale of merchandise and false advertising and were deceptive and misleading practices within the meaning of New York's Consumer Protection from Deceptive Acts and Practices Act, General Business Law §§ 349 and 350.

130.   The limitations on liability set forth in CPLR Section 1601 do not apply

LAW OFFICES
OF
WEITZ
&
LUXEMBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

34

to this action by reason of one or more of the exceptions set forth in CPLR Section 1602.

131.    By reason of the aforesaid, plaintiffs are entitled to recovery against each defendant individually and/or jointly for the statutory damages and attorney's fees.

## COUNT IX
## LOSS OF CONSORTIUM

132.    Plaintiffs herein incorporate by reference as if fully set forth herein each and every allegation contained in paragraphs 1 through 131.

133.    Plaintiffs and Plaintiffs' Spouses, Emery Dodd and Elen Dodd; Mary Dominguez and Frank Dominguez; Vivian Dominguez and Raymond Dominguez; Marie Dopkins and Russell H. Dopkins; John Drennan and Shirley Drennan; Barbara Drobick and Kenneth Drobick; Pauline Duerkop and Gerald Duerkop; Johnny Duncan and Lee Anna Duncan; Theadore Eichenlaub and Thelma Eichenlaub; Lewis Ellsworth and Penny Ellsworth; John Engstrom and Carol Engstrom; Carlos Estrada and Mary Helen Estrada; John Farrell and Lenore Farrell; Edward Felix and Louise Felix; Herbert Fine and Louise Fine; Nancy Fogleman and James Fogleman; Gary Ford and Mary H. Ford; Anna France and Robert France; William Galbraith and Gwen Galbraith; Joe Gallegos and Ofelia Gallegos; Rex Gibbs and Violet D. Gibbs; Eugenia Glasco and Joe N. Glasco; Eleanor Goldstein and Melvin Goldstein; Barbara Golmon and Lloyd D. Golmon; Leopoldo Gomez and Lydia T. Gomez; Ruby Gonzales and John L. Gonzales; Helen Gracia and Edward Gracia; Mary Granison and William Granison; Frederick Green and Clara Green; Sady Greer and Harold E. Greer; Kenneth Greggory and Nancy Greggory; William *Gregory* and Kathleen Gregory; John Grgat and Margaret Grgat; Christa Gross and Alfred Gross; Gerald Groven and Pati

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

35

Groven; Bobby Guyton and Stanislava Guyton; Donald Hall and Patsy Hall; Harvey Harden and Irma Harden; Jess Hardy and Marlene Hardy; Victor Harildstad and Geneva Harildstad; Rita Harkey and William Harkey; Alfred Harlev and Roberta Jean Harlev; Catherine Hartline and Michael Hartline; Ronald Haruff and Patsy Haruff; Barbara Havens and Jack Haven; Lupe Haviland and Dale Haviland; Alden Herman and Elies Herman; Maria Herrera and Victor Herrera; Victor Herrera and Maria Herrera; Tony Hight and Ann M. Hight; Robert Hildebrandt and Sharon Hildebrandt; Ralph Hinojosa, Jr and Linda Hinojosa, Jr; John Hoban and Lola Hoban; Glen Hoch and Lois Hoch; Lawrence Hoel, Jr. and Deborah Hoel; Benita Hoffman and Charles Hoffman; Theodore Holliday and Colleen Holliday; Marjorie Homer and John Homer; Desmond Hooey and Grace Hooey; Jerald Horton and Joyce Horton; Harietta Howard and Jerald Howard; Richard Huebner and Susan Huebner; Mae Huggins and Archie Huggins; Paul Hupp and Marajean Hupp; Bonnie Hyman-Figy and Eugene Figy; Calvin Jackson and Floy Jackson; John Jackson, Jr and Shelby Jackson; Patricia Janssen and John Janssen; Edward Johnson and Shirley Johnson; Floyd Johnson and Gillian Grafton; Jeri-Lou Johnson and Joseph Johnson; Marvin Johnson and Doris Johnson; Richard Jonason and Bess M. Jonason; Nancy Jones and Albert Jones; Alex Juarez and Nancy Juarez; Jerry Kamchi and Beverly Kamchi; Dennis Kelley and Sherry Kelley; and William Kelly and Barbara Kelly; were married prior to the use of Baycol.

134.    As a direct and proximate result of the defendants' wrongdoing as set forth in this Complaint, plaintiffs' spouses were caused to suffer a loss of consortium and will continue to suffer a loss of consortium.

135.    The limitations on liability set forth in CPLR Section 1601 do not apply to this action by reason of one or more of the exceptions set forth on CPLR Section 1602.

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

36

136.    By reason of the aforesaid, plaintiffs are entitled to recovery against the defendants for compensatory damages that exceed the jurisdictional limits of all lower courts.

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

37

## PRAYER FOR RELIEF

**WHEREFORE**, the plaintiffs pray for relief as follows:

For compensatory damages in a sum that exceeds the jurisdictional limit of any Court that would otherwise have jurisdiction.

For punitive and exemplary damages.

For a judgment requiring defendants to pay all costs and expenses of this action, including reasonable attorneys' fees.

For interest as allowed by law.

Dated:      New York, NY
            November 5, 2003

**WEITZ & LUXENBERG**
Paul J. Pennock
Victoria J. Maniatis
180 Maiden Lane
New York, NY 10038
Tel. (212) 558-5500
Dir. (212) 558-5906
Fax: (212) 363-2721

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.

180 MAIDEN LANE
NEW YORK, N.Y. 10038

<u>Verification</u>

The undersigned, an attorney admitted to practice in the courts of New York State, is the attorney of record for SEE ATTACHED RIDER in the within action; deponent has read the foregoing complaint and knows the contents thereof; the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief and that as to those matters deponent believes them to be true. This verification is made by deponent and not by plaintiffs because plaintiffs reside outside the county wherein attorney maintains his office for the practice of law.

Dated: New York, New York
     November 5, 2003

_____
Victoria J. Maniatis

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

T:\DMDL\Baycol\New York Supreme Court\June July 2003 Complaint\Complaint #19\Verification.doc

Plaintiffs' Rider

EMERY DODD AND ELEN DODD;
ROBERT DODD;
MARY DOMINGUEZ AND FRANK DOMINGUEZ;
VIVIAN DOMINGUEZ AND RAYMOND DOMINGUEZ;
MARIE DOPKINS AND RUSSELL H. DOPKINS;
JOHN DRENNAN AND SHIRLEY DRENNAN;
BARBARA DROBICK AND KENNETH DROBICK;
PAULINE DUERKOP AND GERALD DUERKOP;
JOHNNY DUNCAN AND LEE ANNA DUNCAN;
FRANCIS DYKSTRA;
THEADORE EICHENLAUB AND THELMA EICHENLAUB;
EDNA ELLIS;
RONALD ELLIS AND BARI ELLIS;
LEWIS ELLSWORTH AND PENNY ELLSWORTH;
JOHN ENGSTROM AND CAROL ENGSTROM;
CARLOS ESTRADA AND MARY HELEN ESTRADA;
JOHN FARRELL AND LENORE FARRELL;
EDWARD FELIX AND LOUISE FELIX;
SCOTT FERGUSON;
HERBERT FINE AND LOUISE FINE;
ROBERT FINKLE;
ROBERT FISCHER;
GLENN FLATT;
NANCY FOGLEMAN AND JAMES FOGLEMAN;
PETER FOLEY;
GARY FORD AND MARY H. FORD;
ANNA FRANCE AND ROBERT FRANCE;
LOUISE GAGNON;
WILLIAM GALBRAITH AND GWEN GALBRAITH;
JOE GALLEGOS AND OFELIA GALLEGOS;
PAUL GARRAHAN;
SUSAN GEISSENBERGER;
DORIS GEZZAR;
REX GIBBS AND VIOLET D. GIBBS;
EUGENIA GLASCO AND JOE N. GLASCO;
GAIL GODDARD;
EARL GOLDMANN;
ELEANOR GOLDSTEIN AND MELVIN GOLDSTEIN;
BARBARA GOLMON AND LLOYD D. GOLMON;
LEOPOLDO GOMEZ AND LYDIA T. GOMEZ;
RUBY GONZALES AND JOHN L. GONZALES;

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

HELEN GRACIA AND EDWARD GRACIA;
MARY GRANISON AND WILLIAM GRANISON;
KATE GRAVES;
FREDERICK GREEN AND CLARA GREEN;
SADY GREER AND HAROLD E. GREER;
KENNETH GREGGORY AND NANCY GREGGORY;
WILLIAM GREGORY AND KATHLEEN GREGORY;
JOHN GRGAT AND MARGARET GRGAT;
CHRISTA GROSS AND ALFRED GROSS;
GERALD GROVEN AND PATI GROVEN;
BOBBY GUYTON AND STANISLAVA GUYTON;
MARY HABRE;
DONALD HALL AND PATSY HALL;
JACQUES HANDFIELD;
HARVEY HARDEN AND IRMA HARDEN;
JESS HARDY AND MARLENE HARDY;
VICTOR HARILDSTAD AND GENEVA HARILDSTAD;
RITA HARKEY AND WILLIAM HARKEY;
ALFRED HARLEV AND ROBERTA JEAN HARLEV;
CATHERINE HARTLINE AND MICHAEL HARTLINE;
RONALD HARUFF AND PATSY HARUFF;
BARBARA HAVENS AND JACK HAVENS;
LUPE HAVILAND AND DALE HAVILAND;
ALDEN HERMAN AND ELIES HERMAN;
ROBERT HERNANDEZ;
MARIA HERRERA AND VICTOR HERRERA;
VICTOR HERRERA AND MARIA HERRERA;
FLORENCE HERTAUS;
TONY HIGHT AND ANN M. HIGHT;
ROBERT HILDEBRANDT AND SHARON HILDEBRANDT;
RALPH HINOJOSA, JR AND LINDA HINOJOSA, JR;
JOHN HOBAN AND LOLA HOBAN;
GLEN HOCH AND LOIS HOCH;
LAWRENCE HOEL, JR. AND DEBORAH HOEL;
BENITA HOFFMAN AND CHARLES HOFFMAN;
THEODORE HOLLIDAY AND COLLEEN HOLLIDAY;
MARJORIE HOMER AND JOHN HOMER;
DESMOND HOOEY AND GRACE HOOEY;
JERALD HORTON AND JOYCE HORTON;
HARIETTA HOWARD AND JERALD HOWARD;
GLORIA HOWSON;
RICHARD HUEBNER AND SUSAN HUEBNER;
MAE HUGGINS AND ARCHIE HUGGINS;

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE,
NEW YORK, N.Y. 10038

MYRNA HUNT;
PAUL HUPP AND MARAJEAN HUPP;
BONNIE HYMAN-FIGY AND EUGENE HYMAN;
CALVIN JACKSON AND FLOY JACKSON;
ROBERTA JACKSON;
JOHN JACKSON, JR AND SHELBY JACKSON;
FRANCISCO JAIME;
ROSALIE JAMESON;
PATRICIA JANSSEN AND JOHN JANSSEN;
JANICE JERNIGAN;
GERALD JIRON;
DALCIE JOHNSON;
EDWARD JOHNSON AND SHIRLEY JOHNSON;
FLOYD JOHNSON AND GILLIAN GRAFTON;
JERI-LOU JOHNSON AND JOSEPH JOHNSON;
MARVIN JOHNSON AND DORIS JOHNSON;
RICHARD JONASON AND BESS M. JONASON;
GAIL JONES;
NANCY JONES AND ALBERT JONES;
MIDA JORDAN;
ALEX JUAREZ AND NANCY JUAREZ;
JERRY KAMCHI AND BEVERLY KAMCHI;
DENNIS KELLEY AND SHERRY KELLEY;
WILLIAM KELLY AND BARBARA KELLY;

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
————————————————————————————X   Index No: 113020/03
EMERY DODD AND ELEN DODD;
ROBERT DODD;                                                        Hon.
MARY DOMINGUEZ AND FRANK DOMINGUEZ;
VIVIAN DOMINGUEZ AND RAYMOND DOMINGUEZ;
MARIE DOPKINS AND RUSSELL H. DOPKINS;
JOHN DRENNAN AND SHIRLEY DRENNAN;
BARBARA DROBICK AND KENNETH DROBICK;
PAULINE DUERKOP AND GERALD DUERKOP;
JOHNNY DUNCAN AND LEE ANNA DUNCAN;
FRANCIS DYKSTRA;
THEADORE EICHENLAUB AND THELMA EICHENLAUB;
EDNA ELLIS;
RONALD ELLIS AND BARI ELLIS;
LEWIS ELLSWORTH AND PENNY ELLSWORTH;
JOHN ENGSTROM AND CAROL ENGSTROM;
CARLOS ESTRADA AND MARY HELEN ESTRADA;
JOHN FARRELL AND LENORE FARRELL;
EDWARD FELIX AND LOUISE FELIX;
SCOTT FERGUSON;
HERBERT FINE AND LOUISE FINE;
ROBERT FINKLE;
ROBERT FISCHER;
GLENN FLATT;
NANCY FOGLEMAN AND JAMES FOGLEMAN;
PETER FOLEY;
GARY FORD AND MARY H. FORD;
ANNA FRANCE AND ROBERT FRANCE;
LOUISE GAGNON;
WILLIAM GALBRAITH AND GWEN GALBRAITH;
JOE GALLEGOS AND OFELIA GALLEGOS;
PAUL GARRAHAN;
SUSAN GEISSENBERGER;
DORIS GEZZAR;
REX GIBBS AND VIOLET D. GIBBS;
EUGENIA GLASCO AND JOE N. GLASCO;
GAIL GODDARD;
EARL GOLDMANN;
ELEANOR GOLDSTEIN AND MELVIN GOLDSTEIN;
BARBARA GOLMON AND LLOYD D. GOLMON;
LEOPOLDO GOMEZ AND LYDIA T. GOMEZ;
RUBY GONZALES AND JOHN L. GONZALES;
HELEN GRACIA AND EDWARD GRACIA;
MARY GRANISON AND WILLIAM GRANISON;
KATE GRAVES;

FREDERICK GREEN AND CLARA GREEN;
SADY GREER AND HAROLD E. GREER;
KENNETH GREGGORY AND NANCY GREGGORY;
WILLIAM GREGORY AND KATHLEEN GREGORY;
JOHN GRGAT AND MARGARET GRGAT;
CHRISTA GROSS AND ALFRED GROSS;
GERALD GROVEN AND PATI GROVEN;
BOBBY GUYTON AND STANISLAVA GUYTON;
MARY HABRE;
DONALD HALL AND PATSY HALL;
JACQUES HANDFIELD;
HARVEY HARDEN AND IRMA HARDEN;
JESS HARDY AND MARLENE HARDY;
VICTOR HARILDSTAD AND GENEVA HARILDSTAD;
RITA HARKEY AND WILLIAM HARKEY;
ALFRED HARLEV AND ROBERTA JEAN HARLEV;
CATHERINE HARTLINE AND MICHAEL HARTLINE;
RONALD HARUFF AND PATSY HARUFF;
BARBARA HAVENS AND JACK HAVENS;
LUPE HAVILAND AND DALE HAVILAND;
ALDEN HERMAN AND ELIES HERMAN;
ROBERT HERNANDEZ;
MARIA HERRERA AND VICTOR HERRERA;
VICTOR HERRERA AND MARIA HERRERA;
FLORENCE HERTAUS;
TONY HIGHT AND ANN M. HIGHT;
ROBERT HILDEBRANDT AND SHARON HILDEBRANDT;
RALPH HINOJOSA, JR AND LINDA HINOJOSA, JR;
JOHN HOBAN AND LOLA HOBAN;
GLEN HOCH AND LOIS HOCH;
LAWRENCE HOEL, JR. AND DEBORAH HOEL;
BENITA HOFFMAN AND CHARLES HOFFMAN;
THEODORE HOLLIDAY AND COLLEEN HOLLIDAY;
MARJORIE HOMER AND JOHN HOMER;
DESMOND HOOEY AND GRACE HOOEY;
JERALD HORTON AND JOYCE HORTON;
HARIETTA HOWARD AND JERALD HOWARD;
GLORIA HOWSON;
RICHARD HUEBNER AND SUSAN HUEBNER;
MAE HUGGINS AND ARCHIE HUGGINS;
MYRNA HUNT;
PAUL HUPP AND MARAJEAN HUPP;
BONNIE HYMAN-FIGY AND EUGENE HYMAN;
CALVIN JACKSON AND FLOY JACKSON;
ROBERTA JACKSON;
JOHN JACKSON, JR AND SHELBY JACKSON;
FRANCISCO JAIME;

ROSALIE JAMESON;
PATRICIA JANSSEN AND JOHN JANSSEN;
JANICE JERNIGAN;
GERALD JIRON;
DALCIE JOHNSON;
EDWARD JOHNSON AND SHIRLEY JOHNSON;
FLOYD JOHNSON AND GILLIAN GRAFTON;
JERI-LOU JOHNSON AND JOSEPH JOHNSON;
MARVIN JOHNSON AND DORIS JOHNSON;
RICHARD JONASON AND BESS M. JONASON;
GAIL JONES;
NANCY JONES AND ALBERT JONES;
MIDA JORDAN;
ALEX JUAREZ AND NANCY JUAREZ;
JERRY KAMCHI AND BEVERLY KAMCHI;
DENNIS KELLEY AND SHERRY KELLEY;
WILLIAM KELLY AND BARBARA KELLY;

|  | Index No.: 113020/03 |
|---|---|
| Plaintiffs, | |
| | CERTIFICATION |
| - against - | Pursuant to 22 NYCRR |
| | §130-1.1a(b) |

BAYER CORPORATION,
BAYER AG,
GLAXOSMITHKLINE, PLC,
SMITHKLINE BEECHAM CORPORATION
D/B/A GLAXOSMITHKLINE
                              Defendants.
————————————————————————X

I hereby certify pursuant to 22 NYCRR §130-1.1a(b) that, to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the papers listed below or the contentions therein are not frivolous as defined in 22 NYCRR §130-1.1(c):

Dated: New York, New York
       November 5, 2003

_____
               *Signature*

Paul J. Pennock, ESQ.
Victoria J. Maniatis, ESQ.
WEITZ & LUXENBERG, P.C.
180 Maiden Lane, 17th Floor
New York, New York 10038
(212) 558-5906

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

IN RE:       BAYCOL PRODUCTS
             LIABILITY LITIGATION

Hon.

EMERY DODD AND ELLEN DODD;
ROBERT DODD;
MARY DOMINGUEZ AND FRANK DOMINGUEZ,
VIVIAN DOMINGUEZ AND RAYMOND DOMINGUEZ;
MARIE DOPKINS AND RUSSELL H. DOPKINS;
JOHN DRENNAN AND SHIRLEY DRENNAN;
BARBARA DROBICK AND KENNETH DROBICK;
PAULINE DUERKOP AND GERALD DUERKOP;
JOHNNY DUNCAN AND LEE ANNA DUNCAN;
FRANCIS DYKSTRA;
THEADORE EICHENLAUB AND THELMA EICHENLAUB;
EDNA ELLIS;
RONALD ELLIS AND BARI ELLIS;
LEWIS ELLSWORTH AND PENNY ELLSWORTH;
JOHN ENGSTROM AND CAROL ENGSTROM;
CARLOS ESTRADA AND MARY HELEN ESTRADA;
JOHN FARRELL AND LENORE FARRELL;
EDWARD FELIX AND LOUISE FELIX;
SCOTT FERGUSON;
HERBERT FINE AND LOUISE FINE;
ROBERT FINKLE;
ROBERT FISCHER;
GLENN FLATT;
NANCY FOGLEMAN AND JAMES FOGLEMAN;

PETER FOLEY;
GARY FORD AND MARY H. FORD;
ANNA FRANCE AND ROBERT FRANCE;
LOUISE GAGNON
WILLIAM GALBRAITH AND GWEN GALBRAITH;
JOE GALLEGOS AND OFELIA GALLEGOS;
PAUL GARRAHAN;
SUSAN GEISSENBERGER;
DORIS GEZZAR;
REX GIBBS AND VIOLET D. GIBBS;
EUGENIA GLASCO AND JOE N. GLASCO;
GAIL GODDARD;
EARL GOLDMANN;
ELEANOR GOLDSTEIN AND MELVIN GOLDSTEIN;
BARBARA GOLMON AND LLOYD D. GOLMON;
LEOPOLDO GOMEZ AND LYDIA T. GOMEZ;
RUBY GONZALES AND JOHN L. GONZALES;
HELEN GRACIA AND EDWARD GRACIA;
MARY GRANISON AND WILLIAM GRANISON;
KATE GRAVES;
FREDERICK GREEN AND CLARA GREEN;
SADY GREER AND HAROLD E. GREER;
KENNETH GREGGORY AND NANCY GREGGORY;
WILLIAM GREGGORY AND KATHLEEN GREGGORY;
JOHN GRGAT AND MARGARET GRGAT;
CHRISTA GROSS AND ALFRED GROSS;
GERALD GROVEN AND PATI GROVEN;
BOBBY GUYTON AND STANISLAVA GUYTON;
MARY HABRE;
DONALD HALL AND PATSY HALL;

JACQUES HANDFIELD;
HARVEY HARDEN AND IRMA HARDEN;
JESS HARDY AND MARLENE HARDY;
VICTOR HARILDSTAD AND GENEVA HARILDSTAD;
RITA HARKEY AND WILLIAM HARKEY;
ALFRED HARLEY AND ROBERTA JEAN HARLEY;
CATHERINE HARTLINE AND MICHAEL HARTLINE;
RONALD HARUFF AND PATSY HARUFF;
BARBARA HAVENS AND JACK HAVENS;
LUPE HAVILAND AND DALE HAVILAND;
ALDEN HERMAN AND ELIES HERMAN;
ROBERT HERNANDEZ;
MARIA HERRERA AND VICTOR HERRERA;
VICTOR HERRERA AND MARIA HERRERA;
FLORENCE HERTAUS;
TONY HIGHT AND ANN M. HIGHT;
ROBERT HILDEBRANDT AND SHARON HILDEBRANDT;
RALPH HINOJOSA, JR. AND LINDA HINOJOSA, JR.;
JOHN HOBAN AND LOLA HOBAN;
GLEN HOCH AND LOIS HOCH;
LAWRENCE HOEL, JR. AND DEBORAH HOEL;
BENITA HOFFMAN AND CHARLES HOFFMAN;
THEODORE HOLLIDAY AND COLLEEN HOLLIDAY;
MARJORIE HOMER AND JOHN HOMER;
DESMOND HOOEY AND GRACE HOOEY;
JERALD HORTON AND JOYCE HORTON;
HARIETTA HOWARD AND JERALD HOWARD;
GLORIA HOWSON;
RICHARD HUEBNER AND SUSAN HUEBNER;
MAE HUGGINS AND ARCHIE HUGGINS;

MYRNA HUNT;
PAUL HUPP AND MARAJEAN HUPP;
BONNIE HYMAN-RGY AND EUGENE HYMAN;
CALVIN JACKSON AND FLOY JACKSON;
ROBERTA JACKSON;
JOHN JACKSON, JR AND SHELBY JACKSON;
FRANCISCO JAIME;
ROSALIE JAMESON;
PATRICIA JANSSEN AND JOHN JANSSEN;
JANICE JERNIGAN;
GERALD JIRON;
DALCIE JOHNSON;
EDWARD JOHNSON AND SHIRLEY JOHNSON;
FLOYD JOHNSON AND GILLAN GRAFTON;
JERI-LOU JOHNSON AND JOSEPH JOHNSON;
MARVIN JOHNSON AND DORIS JOHNSON;
RICHARD JONASON AND BESS M. JONASON;
GAIL JONES;
NANCY JONES AND ALBERT JONES;
MIDA JORDAN;
ALEX JUAREZ AND NANCY JUAREZ;
JERRY KAMCHI AND BEVERLY KAMCHI;
DENNIS KELLEY AND SHERRY KELLEY;
WILLIAM KELLY AND BARBARA KELLY;

Plaintiffs,

-against-

BAYER CORPORATION,
BAYER AG,
GLAXOSMITHKLINE, PLC,
SMITHKLINE BEECHAM CORPORATION
D/B/A GLAXOSMITHKLINE,

Defendants.

Summons and Complaint

Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558-5500

Attorneys for the Plaintiffs